IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JAMES MILTON MULLINS,**

    **Plaintiff,**

v.                                             **CASE NO. 2:08-cv-01008**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, James Mullins (hereinafter referred to as "Claimant"), filed an application for DIB on January 19, 2006, alleging disability as of June 1, 1990. (Tr. at 47.) The claim was denied initially and upon reconsideration. (Tr. at 30-34, 36-38.) On October 26, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 39.) The hearing was held on August 29, 2007, before the Honorable Jon Johnson. (Tr. at 242-59.) By decision dated October 25, 2007, the ALJ determined

that Claimant was not entitled to benefits. (Tr. at 16-22.) The ALJ's decision became the final decision of the Commissioner on June 25, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On August 18, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §

404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant does not have severe impairments. (Tr. at 18.)  On this basis, benefits were denied. (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-seven years old at the time of the administrative hearing.  (Tr. at 248.)  He has a high school education.  (Tr. at 250.)  In the past, he worked in a stockroom

for a retail store. (Tr. at 249.) Claimant testified to problems with alcoholism and back pain. (Tr. at 249, 258.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On June 19, 1991, Claimant was a restrained driver in a motor vehicle accident. (Tr. at 100.) The handwritten notes are illegible. (Tr. at 100.)

On July 16, 1994, Claimant reported to the emergency room seeking help with problems related to alcoholism. Claimant denied complaints of depression, anxiety or suicidal ideation. Claimant was diagnosed with alcohol withdrawal with hallucinosis on Axis I. An Axis II diagnosis was deferred. (Tr. at 128.) Claimant was admitted to the hospital for detoxification treatment and was discharged in stable condition on July 26, 1994. (Tr. at 223.)

On January 6, 1995, Claimant reported to the emergency room after falling eight to ten inches off of a couch. Claimant was diagnosed with lumbar strain and instructed to refrain from using alcohol. (Tr. at 87.)

On February 21, 1995, Claimant reported to the emergency room complaining of a seizure prior to a traffic accident. Claimant reported no history of seizures. The assessment was syncope from seizure disorder, and Claimant was prescribed Dilantin. (Tr. at 96.)

On February 23, 1995, Claimant reported to the emergency room again after developing hallucinations, a side effect of Dilantin. Claimant was instructed to stop the Dilantin and follow up at the medical clinic. (Tr. at 116.)  X-rays of Claimant's cervical spine on February 23, 1995, showed minimal narrowing of the C5-6 disc space. Vertebral body heights and their soft tissues were unremarkable.  The impression was minimal spondylosis at C5-6. (Tr. at 113.)

On April 21, 1998, Claimant reported to the emergency room with left shoulder and neck pain after trying to crawl under a fence and drop down by holding onto the fence with his left hand. Claimant had no numbness or weakness.  Claimant was diagnosed with left shoulder and cervical strain.  He was prescribed a splint for the left arm to be used for three days and Naprosyn and Tylenol 3. (Tr. at 122.)  X-rays of the cervical spine showed intravertebral disc space narrowing at the C5-C6 level with posterior osteophytes at this level.  X-rays of the left shoulder were normal.  (Tr. at 124.)

On November 15, 2001, Claimant reported to the emergency room with complaints of shortness of breath after engaging in fairly heavy activity.  Claimant reported drinking a few beers every day. (Tr. at 107.)  Claimant was diagnosed with acute bronchitis with bronchospasm, paresthesias secondary to hyperventilation, acute ethanol intoxication and hallucinations.  (Tr. at 109.)

On April 18, 2002, Claimant reported to the emergency room with dyspnea, diaphoresis and wheezing. Claimant was diagnosed with bronchitis with reactive airway disease. (Tr. at 143.)

On October 8, 2002, Claimant reported to the emergency room with complaints of vomiting, chills and nausea. He was diagnosed with gastroenteritis and new onset of diabetes mellitus. Claimant's glucose level was high at 361. The physician was reluctant to start Claimant on any medication for diabetes because of lack of proper diabetic training. Claimant was instructed to follow up in the medical clinic in a few weeks for establishment of diabetic management. (Tr. at 146.)

On August 18, 2004, Claimant reported to the emergency room with complaints of "drinking too much." (Tr. at 153.) Claimant reported drinking twenty-four cans of beer per day. (Tr. at 153.)

On February 28, 2006, Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service. Claimant reported back pain after a car accident in 1986. Dr. Bhirud concluded that Claimant is a forty-five year old male "who gives [a] history of alcohol abuse. He has been in rehabilitation several times. He still continues to drink. At the time of examination, he had tremors of both hands. There was no evidence of hepatosplenomegaly. He had moderate lumbar tenderness. [Straight leg raising was] at 70 degrees on both sides." (Tr. at 193.)

On February 28, 2006, Lisa C. Tate, M.A. examined Claimant at the request of the State disability determination service. Claimant reported no history of mental health treatment. (Tr. at 198.) Ms. Tate diagnosed alcohol dependence on Axis I and made no Axis II diagnosis. (Tr. at 199.)

On March 6, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with an occasional ability to balance and stoop and a need to avoid concentrated exposure to vibration and hazards. (Tr. at 157-64.)

On March 8, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 165-78.)

On September 23, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had no severe mental impairments. (Tr. at 201-13.)

On September 23, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work reduced by an occasional ability to balance, stoop, crouch and crawl, a limited ability to handle due to tremors possibly caused by abuse of alcohol and a need to avoid concentrated exposure to hazards. (Tr. at 215-22.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not

supported by substantial evidence because (1) the ALJ failed to follow Social Security Ruling ("SSR") 96-2 [sic 96-2p] when he disregarded the findings and opinions of Claimant's treating physician; (2) the ALJ failed to consider Claimant's impairments in combination; (3) the ALJ erred in discrediting Claimant's subjective complaints of pain; and (4) the ALJ failed to elicit testimony from a vocational expert. (Pl.'s Br. at 3-10.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant did not have a severe impairment; (2) the ALJ properly weighed the medical evidence of record; (3) the ALJ's findings related to pain and credibility are supported by substantial evidence; and (4) the ALJ was not required to elicit testimony from a vocational expert. (Def.'s Br. at 3-10.)

Claimant first argues that the ALJ failed to follow SSR 96-2 [sic 96-2p] when he disregarded the findings of Claimant's treating physician. (Pl.'s Br. at 3.) SSR 96-2p "explains terms used in the Social Security Administration regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and clarifies how the policy is applied." SSR 96-2p, 1996 WL 362211, at * 34490 (July 2, 1996).

Claimant does not elaborate on this argument or indicate to which treating source opinion he refers. In fact, the record contains no treating source opinion of record. Claimant also argues that he was unable to afford the "necessary extensive

9

medical treatment, nor does he have medical insurance to cover the costs." (Pl.'s Br. at 4.) Claimant reported to the emergency room a number of times over the years for a variety of minor complaints and for treatment of his alcoholism. There was rarely a suggestion that Claimant obtain further treatment, other than for his alcoholism, diabetes and seizures. As the ALJ indicated in his decision, Claimant testified at the administrative hearing that his diabetes was under control and there was no evidence of record that Claimant had problems with seizures beyond the one time he reported to the emergency room. (Tr. at 20, 257.) Claimant was not taking seizure medication at the time of the administrative hearing. (Tr. at 257.) Claimant's arguments related to lack of treatment are not convincing, and the court proposes that the presiding District Judge so find. Thus, the court further proposes that the presiding District Judge find that the ALJ did not err in failing to follow 96-2p in light of the absence of evidence from a treating physician.

Next, Claimant complains that the ALJ erred in adopting the opinion of the State agency medical source who opined that Claimant had no severe mental impairments. Claimant refers to the Psychiatric Review Technique form completed on March 8, 2006, in which the State agency medical source opined that Claimant had no severe mental impairments. (Tr. at 165-78.) Claimant argues that the medical source's statement that "clmt notes does not know when

10

describing handling changes" and "he notes nerves under unusual behavior" (Tr. at 177)[1], relied upon by the ALJ, was incoherent. (Pl.'s Br. at 7.) Claimant also refers to statements by the State agency source that Claimant drinks up to twelve beers per day, but that his social functioning was normal. Claimant asserts that these statements are "incongruent." (Pl.'s Br. at 7.) Claimant asserts that the ALJ should have submitted interrogatories to the State agency medical source seeking clarification. (Pl.'s Br. at 8.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the evidence of record related to Claimant's mental condition, and his finding that Claimant does not suffer a severe mental impairment is supported by substantial evidence. The statements of the State agency medical source to which the Claimant refers are found in the State agency's summary of Claimant's statement on a Function Report Adult. On the report, when asked how well he handled changes in routine, Claimant stated "don't know." (Tr. at 72.) When asked if he had noticed any unusual behavior or fears, Claimant stated "nerves." (Tr. at 72.) The State agency medical source's statements are not incoherent. Her opinion makes clear that Claimant's mental impairments are not severe, and her findings are well explained and supported by

---

[1] Claimant did not cite to the page on which these statements were made, and though the court was able to locate them, in future filings, pinpoint cites are preferred.

11

substantial evidence. In his decision, the ALJ explained that he gave significant weight to this opinion, and the consistent opinion of the other State agency medical source who also opined that Claimant's mental impairments were not severe. The opinions of these nonexamining sources were consistent with the findings of Ms. Tate, who examined Claimant in February of 2006. The substantial evidence of record makes clear that Claimant suffers from alcoholism, but that he does not have a severe mental impairment independent of his alcoholism. See 42 U.S.C. § 423(d)(2)(C) ("[a]n individual shall not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"); 20 C.F.R. § 404.1535(b) (2007) (alcoholism is a contributing factor if the claimant would not be disabled if he stopped using alcohol).

Claimant also complains that the ALJ erred in failing to consider his combined impairments and in assessing his subjective complaints related to his physical impairments. (Pl.'s Br. at 6, 9.)

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's impairments in combination and that his findings related to Claimant's subjective complaints of pain are in keeping with the applicable regulation and caselaw and supported by substantial evidence. 20 C.F.R. § 404.1523 (2007); 20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186

(July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

In his decision, the ALJ fully considered all of Claimant's medically determinable mental and physical impairments, alone and in combination, including alcoholism, low back pain and lumbar strain. Importantly, at step two of the sequential analysis in determining whether Claimant had severe impairments, the ALJ considered Claimant's subjective complaints of pain, as is required by SSR 96-3p. (Tr. at 15); SSR 96-3p, 1996 WL 362204, *34469-70 (July 2, 1996) (The Commissioner must consider Claimant's subjective complaints of pain and other symptoms at the second step of the sequential analysis once a medically determinable impairment is shown.).

The ALJ determined that Claimant had shown evidence of a medically determinable impairment that could cause the symptoms alleged. (Tr. at 21.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects and treatment other than medication. (Tr. at 20-21.)

The ALJ ultimately concluded that Claimant's subjective complaints were not entirely credible concerning the intensity, persistence and limiting effects alleged by Claimant. The ALJ relied on the fact that Claimant took no pain medication and had

not been to the emergency room for his complaints related to back pain. (Tr. at 21.) The ALJ ultimately concluded that Claimant suffered no severe physical or mental impairments. With respect to Claimant's physical impairments in particular, the ALJ adequately explained his findings regarding the weight afforded the evidence of record and they are in keeping with the applicable regulation related to weighing medical opinions. 20 C.F.R. § 404.1527(d) (2007). The ALJ's findings are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Finally, because Claimant did not have severe impairments, the ALJ was not obligated to proceed past the second step in the sequential analysis and, as such, was not required to consult the vocational expert. Notably, if the Commissioner finds that Claimant is not disabled at a certain step, he need not proceed to the next step. 20 C.F.R. § 404.1520(a)(4) (2007). Therefore, the court proposes that the presiding District Judge find that the ALJ did not err in failing to question the vocational expert at the administrative hearing.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the

Honorable Joseph R. Goodwin, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

  May 29, 2009                                     *Mary E. Stanley*
      Date                                       Mary E. Stanley
                                               United States Magistrate Judge